UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
TIMOTHY DANIEL PORTALATIN,

                Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-920 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Timothy D. Portalatin, proceeding *pro se*,[1] brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's claim for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court construes Plaintiff's complaint as a motion for judgment on the pleadings[2] that seeks to reverse the Commissioner's decision and/or remand for further administrative proceedings. Also before the Court is the Commissioner's motion for judgment on the pleadings, which the Court treats as a cross-motion for judgment on the pleadings. The Commissioner asks this Court to affirm the denial of Plaintiff's claim. For the following reasons, the Court grants Plaintiff's motion for

---

[1] Because Plaintiff is *pro se*, the Court construes his submissions liberally and interpret them to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

[2] Where, as here, a social security claimant challenges his denial of benefits as a *pro se* plaintiff, precedent in this Circuit indicates that "even when the plaintiff fails to file a brief, courts still ought [to] examine the record to determine whether the hearing officer applied the correct legal standards and reached a decision based on substantial evidence." *Vaughn v. Colvin*, 116 F. Supp. 3d 97, 101–02 (N.D.N.Y. 2015) (quotation and brackets omitted).

1

judgment on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum & Order.

## BACKGROUND

### I. Procedural History

On August 7, 2014, Plaintiff filed an application for DIB with the SSA in which he claimed to suffer from the following impairments since December 13, 2013: post-traumatic stress syndrome; anxiety; depression; mood swings; flashbacks; inability to concentrate; insomnia; recurring nightmares waking into cold sweats; irrational fears of being in a train, vehicle, or elevator; and "heart palpitations [and] rapid heartbeat." (Administrative Transcript ("Tr."), Dkt. 6, at ECF[3] 39, 85.) After the SSA determined that Plaintiff was not disabled (*id.* at ECF 39, 98–103), Plaintiff requested a hearing and appeared before Administrative Law Judge Ifeoma N. Iwuamadi (the "ALJ") on December 1, 2016 (*id.* at ECF 39, 104–05, 144). On December 29, 2016, the ALJ ruled that Plaintiff was not disabled and was therefore not entitled to DIB. (*Id.* at ECF 39–52.) Thereafter, Plaintiff requested review of the ALJ's decision and the SSA declined that request on December 4, 2017. (*Id.* at ECF 19–23.) This appeal followed.[4] (*See generally* Compl., Dkt. 1.)

### II. The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R.

---

[3] "ECF" refers to the "Page ID" number generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[4] For the reasons discussed *infra*, the Court concludes that the Commissioner waived any argument that the instant appeal before this Court is untimely.

§ 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe . . . impairment." *Id.* § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii). In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 13, 2013 and that Plaintiff suffered from the following severe impairments: asthma, anxiety, "a depressive disorder," post-traumatic stress disorder, and "a panic disorder." (Tr., Dkt. 6, at ECF 41.)

Having determined that Plaintiff satisfied his burden at the first two steps, the ALJ proceeded to the third step, at which the ALJ considers whether any of the claimant's impairments meet or equal one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *see also id.* Pt. 404, Supt. P, App. 1. In this case, the ALJ concluded that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr., Dkt. 6, at ECF 41–43.) Moving on to the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[5] to perform

> a full range of work at all exertional levels but with the following nonexertional limitations: He can occasionally climb ramps and stairs. He cannot have concentrated exposure to dust, odors, fumes and pulmonary irritants. He can perform only simple, routine tasks and make simple work-related decisions with only occasional contact with supervisors and coworkers and no contact with the public.

(Tr., Dkt. 6, at ECF 43.)

---

[5] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." 20 C.F.R. § 404.1545(a)(1).

3

Relying on her RFC finding from step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work as a forklift operator or data entry clerk. (*Id.* at ECF 50.) The ALJ then proceeded to step five. At step five, the ALJ must determine whether the claimant—given his RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity," there were jobs that existed "in significant numbers in the national [e]conomy" that Plaintiff could perform, namely: (1) "[l]aborer-stores," of which there are 275,000 such jobs in the national economy; (2) "sweeper/cleaner," of which there are 450,000 such jobs in the national economy; and (3) "car cleaner," of which there are 200,400 such jobs in the national economy. (Tr., Dkt. 6, at ECF 50–51.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quotations and brackets omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation omitted). However, the Court "defer[s] to the

4

Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g).

## DISCUSSION

I.  **Statute of Limitations**

"The Commissioner's determination" that Plaintiff was not entitled to DIB "became final when the Appeals Council" of the SSA denied Plaintiff's "request for review of the ALJ's decision" on December 4, 2017. *Roda v. Apfel*, No. 99-CV-9536 (DAB), 2001 WL 58014, at *2 (S.D.N.Y. Jan. 24, 2001); *see Lamorey v. Barnhart*, 158 F. App'x 361, 362 (2d Cir. 2006) (summary order) (noting that "the Commissioner's decision bec[omes] final upon denial of review by the [SSA] Appeals Council"). Section 405(g) provides that,

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on December 9, 2017—five days after December 4, 2017—and notes that 60 days after December 9, 2017 is February 7, 2018. Plaintiff commenced the instant action on February 8, 2018—*one* day late. (*See* Complaint, Dkt. 1, at ECF 3 (*pro se* complaint dated February 8, 2018).)

Because "the 60-day limitations period is waivable by the parties" and the Commissioner "has not raised a timeliness issue" in its submissions before this Court, "the limitations period is deemed to have been waived." *Talavera v. Astrue*, No. 08-CV-4650 (ARR), 2010 WL 3325408, at *3 n.2 (E.D.N.Y. Aug. 19, 2010) (citing *Weinberger v. Salfi*, 422 U.S. 749, 763–64 (1975)); *see also Janas v. Barnart*, 451 F. Supp. 2d 483, 486 n.2 (W.D.N.Y. 2006) ("[T]he 60-day limitations period is waivable by the parties."); *Ryan v. Burwell*, No. 14-CV-269 (GWC), 2016 WL 158527, at *3 (D. Vt. Jan. 13, 2016) ("It is true that the [Commissioner] may waive § 405(g)'s 60-day requirement." (citing *City of New York v. Heckler*, 742 F.2d 729, 736 (2d Cir. 1984))).

Accordingly, the Court proceeds to the merits of the parties' cross-motions.

## II. Merits

Plaintiff argues that the ALJ failed to adequately consider the medical opinions provided by various mental health professionals that indicated that Plaintiff suffered from debilitating and severe psychiatric impairments. (*See* Plaintiff's Brief, Dkt. 17, at ECF 504 ("At every step the Social Security Administration has unfairly weighed the evidence of my case, while psychiatrists have explicitly noted my psychiatric conditions, I have been clear that I have 'relatively' good days and bad days, good weeks and bad weeks, good moments and bad moments."), ECF 510 ("My psychiatric disability is well documented, neither my intelligence nor ability to make use of logic was []ever in question, it is my psychiatric state that suffers. Psychiatrists, Psychologists, Counselors, [and] Medical Doctors have documented my condition . . . ."). The Court agrees and concludes that remand on this basis is warranted.

### A. The ALJ Failed to Properly Apply the Treating Physician Rule

The information in the record with respect to Plaintiff's treating psychiatrist—Dr. Dora Zaretsky—is as follows. From October 2014 through November 2016, Dr. Zaretsky treated

6

Plaintiff. (Tr., Dkt. 6, at ECF 45–46.) On January 4, 2016, Dr. Zaretsky completed a mental impairment questionnaire in which she noted that Plaintiff (1) suffered from "intrusive recollection of a traumatic event," anxiety, and panic attacks; (2) was moderately impaired in his ability to set realistic goals and make plans independently; (3) was moderately to markedly impaired in his ability to carry out detailed instructions; and (4) was markedly impaired in his ability to travel to unfamiliar places and use public transportation. (*Id.* at ECF 392–93.) The ALJ gave Dr. Zaretsky's opinion "some weight" and noted that her statement that Plaintiff's limitations had been present since December 13, 2013 (*id.* at ECF 394) could not be corroborated because "Dr. Zaretsky had no treatment relationship with [Plaintiff] until October 2014." (*Id.* at ECF 49.)

The Court concludes that the ALJ's decision to give only "some weight" to Dr. Zaretsky's January 2016 medical opinion was not supported by substantial evidence. "With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."[6] *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quotations, brackets, and citations omitted). As the Second Circuit has explained:

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion. Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. The regulations also specify that the Commissioner will always give good reasons in her notice of determination or decision for the weight she gives claimant's treating source's opinion.

---

[6] Although "[t]he current version of the [Social Security Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, which was initially filed on April 7, 2014, as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); 20 C.F.R. § 404.1520(c).

7

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citations and quotations omitted).

The Court concludes that remand is required to allow the ALJ to specifically identify and consider the aforementioned factors as they relate to Dr. Zaretsky's medical opinion. To the extent the ALJ is unable to engage in an analysis under the five factors on the record before her, she must affirmatively consult with Dr. Zaretsky in order to develop a record that enables her to do so. As courts in this Circuit have held, "the ALJ must make every reasonable effort to help an applicant get medical reports from his medical sources" and "must seek additional evidence or clarification when the report from the claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quotations and brackets omitted); *see also* 20 C.F.R. § 416.927(d)(2).

To the extent the ALJ found that Dr. Zaretsky's opinion lacked a sufficient basis because she determined that Plaintiff's symptoms began in December 2013—nine months before Dr. Zaretsky's treatment of Plaintiff began—the ALJ's analysis was incomplete. Once the ALJ concluded that Dr. Zaretsky's medical reports contained a deficiency, she was obligated to "seek clarification and additional information from [Dr. Zaretsky] to fill any clear gaps before dismissing [her] opinion." *Calzada*, 753 F. Supp. 2d at 269. In other words, if the ALJ wanted to disregard Dr. Zaretsky's medical opinion, she needed to first ask her to clarify the perceived deficiencies in her medical opinion.[7]

---

[7] Moreover, for the reasons discussed *infra*, the Court observes that Dr. Zaretsky's medical opinion appears consistent with the other medical opinions provided by mental health professionals, which suggests that Dr. Zaretsky's opinion was entitled to more weight than the ALJ gave it. *See Nusraty v. Colvin*, 213 F. Supp. 3d 425, 439 (E.D.N.Y. 2016) (finding that "the

8

### B. The ALJ Substituted Her Own Opinion for That of a Medical Expert

The Court finds that the ALJ improperly substituted her own medical opinion for that of a medical expert when she elevated the opinion of Dr. John Fkiaras, a state agency medical consultant, over the opinions of Drs. Johari Massey, a psychologist, and Pavlos Kymissis, a psychiatrist—both of which the ALJ rejected—in assessing Plaintiff's mental health impairments. As discussed, *supra*, the ALJ concluded that Plaintiff suffered from five severe impairments—four of which related to Plaintiff's mental, as opposed to physical, health. (*See* Tr., Dkt. 6, at ECF 41 (concluding that Plaintiff suffers from asthma, anxiety, "a depressive disorder," post-traumatic stress disorder, and "a panic disorder").) However, with respect to non-treating medical providers who examined Plaintiff, the ALJ stated at the hearing that she (1) gave "considerable weight" to the medical opinion provided by Dr. Fkiaras (Tr., Dkt. 6, at ECF 49), a physician who did not meaningfully assess Plaintiff's mental health; and (2) gave "no weight" to the medical opinions provided by Drs. Massey and Kymissis, who both assessed Plaintiff's functionality with respect to his mental impairments (*id.*). Accordingly, remand is appropriate.

#### 1. Dr. Fkiaras

The ALJ's evaluation of the medical opinion provided by Dr. Fkiaras—the only physician whose opinion the ALJ accorded "considerable weight"—consisted of the following:

> On October 21, 2014, the claimant was examined by Dr. J. Fkiar[a]s, a state agency medical consultant (Exhibit 6F). On physical examination, the claimant's gait was normal. The skin, head, ears, eyes, nose and throat were normal. The lungs were clear and heart had regular rate and rhythm. The spine and joints had full and pain free ranges of motion. No neurological deficits were found. Grip strength was full. The diagnostic impression was a history of atrial septal defect, surgically repaired; asthma, diet-controlled diabetes, and hypertension. Dr. Fkiar[a]s opined that the claimant should avoid smoke, dust and other known respiratory irritants. . . . *The*

---

ALJ's conclusion that [the treating physician's] opinion [was] inconsistent with his own notes and with the medical record [was] not supported by substantial evidence because the ALJ failed to consider the evidence in the record that [was] consistent with [the treating physician's opinion]").

9

> *opinion of Dr. Fkiar[a]s at Exhibit 6F is consistent with the treatment evidence (see Exhibit 9F). Therefore, it is given considerable weight.*

(Tr., Dkt. 6, at ECF 45, 49 (emphasis added).) Exhibit 9F—which the ALJ interpreted as being consistent with Dr. Fkiaras' medical opinion—consists of an assessment completed by Dr. Haifan Chen, Plaintiff's primary care doctor. (*Id.* at ECF 348–60.)[8]

Although it was consistent with Dr. Fkiaras' medical opinion, Dr. Chen's assessment also acknowledged Plaintiff's anxiety. (*See id.* at ECF 352 ("[Plaintiff] has anxiety, on Ativan and is going to see psychiatrist. [Plaintiff] lives on Staten Island and comes to [F]lushing to visit his girlfriend and needs Ativan for couple days."). In contrast, Dr. Fkiaras' examination of Plaintiff made no reference to Plaintiff's anxiety, depressive disorder, post-traumatic stress disorder, or panic disorder. (*See id.* at ECF 334–37.) Therefore, the Court concludes that the ALJ did not have sufficient evidence about Dr. Fkiaras' assessment of Plaintiff's mental impairments to accord it considerable weight. Because Dr. Fkiaras' assessment of Plaintiff "centered exclusively" on Plaintiff's physical impairments and "made no assessment of Plaintiff's work-related limitations" with respect to his mental impairments, remand is required. *Whittier v. Comm'r of Soc. Sec.*, No. 18-CV-4142 (PKC), 2019 WL 3451734, at *5 (E.D.N.Y. July 31, 2019).

2. <u>Dr. Massey</u>

In October 2014, Dr. Massey, a psychologist, evaluated Plaintiff and concluded that although Plaintiff was "able to follow and understand simple directions," his "ability to maintain a regular schedule appear[ed] to be mild to moderately impaired" and that his "abilities to relate adequately with others and appropriately deal with stress appear[ed] to be moderately to markedly impaired." (Tr., Dkt. 6, at ECF 331.) The ALJ determined that Dr. Massey's opinion was entitled

---

[8] This assessment identifies several "[d]ate[s] of [s]ervice," ranging from October 30, 2013 through November 18, 2014. (*Id.*)

10

to "no weight since it [was] not consistent with the overall evidentiary record." (*Id.* at ECF 49.) The ALJ elaborated that "Dr. Massey's description of the claimant notwithstanding, he regularly goes to treatment sessions, typically using public transportation to do so, and he engages in a broad range of living activities." (*Id.*)

The Court finds that the ALJ improperly concluded that Dr. Massey's opinion was entitled to no weight because it was at odds with the fact that Plaintiff "regularly goes to treatment sessions, typically using public transportation to do so, and he engages in a broad range of living activities." (*Id.* at ECF 49.) It was not within the ALJ's purview to determine that Plaintiff's ability to travel to his treatment sessions and/or engage in other "living activities" somehow negated Dr. Massey's evaluation of Plaintiff's medical impairments. *See Indelicato v. Colvin*, No. 13-CV-4553 (JG), 2014 WL 674395, at *3 (E.D.N.Y. Feb. 21, 2014) (noting that "an ALJ is not a doctor, and therefore is not equipped to make medical judgments"); *Beckers v. Colvin*, 38 F. Supp. 3d 362, 374–75 (W.D.N.Y. 2014) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination. Nor is it appropriate for an ALJ to substitute his own opinion for the findings of medical sources on the record." (quotation and citation omitted)).

3. Dr. Kymissis

During October and November of 2016, Dr. Kymissis, a psychiatrist, evaluated Plaintiff multiple times and summarized his findings as follows:

> In conclusion, [Plaintiff] has been a sensitive person all his life. He has a history of [being] abused by his father. He also has a history of anxiety and panic attacks, and he has not been able to keep a job. After [a car accident on] September 16, 2012 his condition became much worse. He became depressed, he has frequent nightmares and he has not been able to drive. Due to his current symptomatology, he is not able to perform any kind of work at the present time.

11

(Tr., Dkt. 6, at ECF 417.) The ALJ gave Dr. Kymissis' opinion no weight. (*Id.* at ECF 49.) She explained that "[i]t is not clear that there has been a treatment relationship between [Plaintiff] and Dr. Kymissis," because even "[t]hough [Dr. Kymissis] assert[ed] that" a treating relationship began on "October 31, 2016, there [was] no corroboration of this assertion." (*Id.*) The ALJ went on to reason that Dr. Kymissis "provided no objective medical evidence to support his statements" and that "his opinion [was] not consistent with the opinion provided by Dr. Zaretsky, who [] had a long-standing treatment relationship with [Plaintiff] and who ha[d] opined that [Plaintiff] [could] function at a reasonably high level." (*Id.*)

The Court finds that remand is required to enable the ALJ to properly assess Dr. Kymissis' medical opinion. Given the ALJ's determination that "[i]t [was] not clear that there has been a treatment relationship between [Plaintiff] and Dr. Kymissis" (*id.*), she had an obligation to develop the record to determine whether or not Dr. Kymissis was Plaintiff's treating physician. In deciding whether a doctor was a social security claimant's treating physician during the relevant time period, "the ALJ has 'an affirmative obligation to develop the administrative record.'" *Vogel v. Colvin*, No. 12-CV-3111 (FB), 2013 WL 5566108, at *4 (E.D.N.Y. Oct. 9, 2013) (quoting *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999)). To the extent the administrative record did not clarify whether or not Dr. Kymissis was Plaintiff's treating physician, the ALJ was required to "seek additional evidence or clarification" in the face of a record that "[did] not contain all the necessary information." *Calzada*, 753 F. Supp. 2d at 269 (quotation omitted); *Avila v. Astrue*, 933 F. Supp. 2d 640, 653 (S.D.N.Y. 2013) ("[T]he ALJ could not reasonably have relied on the absence of treatment notes because the ALJ himself had the affirmative duty to seek any medical records to complete the file.").

Under these circumstances, it is "appropriate for this Court to remand this case to the ALJ to make an explicit and supported determination as to whether Dr. [Kymissis] was Plaintiff's treating physician[,]" and, if so, what weight, if any, his opinion deserved. *Brathwaite v. Barnhart*, No. 04-CV-2850 (GBD) (DF), 2007 WL 5322447, at *12 (S.D.N.Y. Dec. 20, 2007); *see id.* at *11–12 (remanding for further proceedings where "the question of whether [a physician] should have been considered a 'treating physician,' whose opinion should be accorded 'controlling' or at least significant weight," was unresolved in the administrative transcript). If, after soliciting the necessary information from Dr. Kymissis on remand, the ALJ determines that his opinion is still entitled to no weight, she must adduce evidence from a medical professional to support that conclusion. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute [her] own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.").

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 25, 2019
      Brooklyn, New York